UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20097-CR-GRAHAM

UNITED STATES OF AMERICA

vs.

PEDRO ALFONSO ALATORRE DAMY,

      **Defendant.**

_____/

### DECLARATION OF DEA SPECIAL AGENT AUSTIN LOVE
### IN SUPPORT OF FORFEITURE OF PROPERTY

    I, Austin Love, under penalty of perjury, declare:

    1.    I am a Special Agent of the Drug Enforcement Administration ("DEA"), and have been so employed since January 2012. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. Prior to becoming a DEA Special Agent, I was employed for approximately three years at the Department of Homeland Security, U.S. Customs and Border Protection ("CBP"), Office of Field Operations. I was a CBP Officer in San Francisco, California.

    2.    I have received training in the enforcement of laws regarding controlled substances, as found in Title 21 of the United States Code. I have attended the DEA's sixteen-week basic agent training academy in Quantico, Virginia, where I received specialized training in the methods and techniques used by individuals involved in drug trafficking. I have conducted drug-trafficking and money laundering investigations and I have debriefed and participated in the debriefings of defendants, informants, and witnesses, who have participated in drug-trafficking

activity.

3. I personally participated in the investigation of the above-captioned case. As a result of this participation, as well as information provided by other law enforcement personnel, I am familiar with this investigation. The information contained in this declaration is based upon my personal knowledge and my review of documents and records gathered during the course of this investigation, as well as information obtained, directly or indirectly, from other sources and agents, including information provided to me by other agents who are involved in the investigation.

4. I make this sworn declaration in support of the United States' Motion for Second Preliminary Order of Forfeiture. Because this declaration is being submitted for a limited purpose, it does not include all of the facts that I have learned during the course of the investigation.

## SUBJECT ASSETS

5. This declaration is submitted in support of the forfeiture of the following assets:

   i. A total of approximately $108,093.15 in U.S. currency, more fully described as (collectively, the "**Subject Funds**"):

      a. Approximately $1,436 in U.S. currency seized from account number ending in 2483 held by Pedro Alfonso Alatorre-Damy at SunTrust Bank ("SunTrust Account No. 2483");

      b. Approximately $7,696.19 in U.S. currency seized from account number ending in 3390 held by Alatorre-Damy LLC at SunTrust Bank ("SunTrust Account No. 3390");

      c. Approximately $1,000 in U.S. currency seized from account number ending in 1972 held by Tahyri Diaz Molina at SunTrust Bank ("SunTrust Account No. 1972");

      d. Approximately $52,642.17 in U.S. currency seized from account number ending in 2147 held by Tahyri Diaz Molina at SunTrust Bank ("SunTrust Account No. 2147");

      e. Approximately $43,080.21 in U.S. currency seized from account number ending in 1279 held by Bertha Patricia Damy de Gonzalez at SunTrust Bank ("SunTrust Account No. 1279");

2

    f. Approximately $2,238.58 in U.S. currency seized from account number ending in 2152 held by Bertha Patricia Damy de Gonzalez ("SunTrust Account No. 2152"); and

  ii. Latinos 305 Cafe, LLC, and all assets of the business located at 44 N.E. 1st Street, Miami, Florida 33132 ("**Subject Café**").

## FACTUAL BACKGROUND

### A. Criminal Conviction and Forfeiture Money Judgment

6. On or about February 1, 2008, a federal grand jury indicted Casa de Cambio Puebla ("CDC Puebla"), Pedro Alfonso Alatorre Damy, also known as "Pedro Barraza Urtusuastegui," (the "Defendant"), Jose Gutierrez de Velasco Hoyos, Amador Cordero Vazquez, and Leonardo Vazquez Estrada on 54 counts of narcotics trafficking and money laundering charges, in violation of 21 U.S.C. §§ 952, 959, 963 and 18 U.S.C. § 1956.

7. On or about February 20, 2013, pursuant to a written plea agreement, Pedro Alfonso Alatorre Damy (the "Defendant" or "Alatorre Damy") pleaded guilty to conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) and as charged in Count 42 of the Indictment.

8. In his plea agreement, the Defendant knowingly and voluntarily agreed that upon acceptance of his guilty plea, to forfeit his interest in the property sought for forfeiture by the government and to waive his right to a jury trial on the issue of forfeiture as well as all, constitutional, legal, and equitable defenses to the forfeiture of the property. He also waived further notice of forfeiture, and knowingly and voluntarily agreed to the entry of an order of forfeiture of property to the United States.

9. On or about January 15, 2014, the Court entered an Order of Forfeiture, which forfeited, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and 28 U.S.C. § 2461(c), all right, title, claim and interest of the Defendant and co-defendant Amador Cordero Vazquez in the following

property:

    (a)    the sum of $170,000,000.00 in U.S. currency, representing the amount of money involved in the money laundering offense (hereinafter "Forfeiture Money Judgment");

    (b)    the sum of approximately $10,885,089.48 in U.S. currency, seized from the accounts of Casa de Cambio Puebla, S.A. at Wachovia Bank, N.A., on or about May 17, 2017;

    (c)    the sum of approximately $12,616.45 in U.S. currency, seized from the accounts of Casa de Cambio Puebla, S.A. at Wachovia Bank, N.A., on or about May 17, 2017; and

    (d)    the sum of approximately $2,677,636.25 in U.S. currency, seized from the accounts of Casa de Cambio Puebla, S.A. at Harris Bank, N.A., on or about November 6, 2007.

**B. Subject Funds**

10. On or about April 11, 2013, the Defendant was sentenced to time served and two years of supervised release. At the time of his conviction, he reported that he had no assets.

11. Approximately a year after the Defendant was sentenced, beginning on or about March 7, 2014, and continuing through at least September 30, 2015, approximately 220 travelers cheques issued by American Express, each in the amount of $1,000 in U.S. currency, were deposited into the following eight accounts at SunTrust Bank (collectively, the "SunTrust Accounts"):

| DEPOSIT OF TRAVELERS CHEQUES (3/7/2014 – 9/30/2015) | | | | |
|---|---|---|---|---|
| # | Acct No. | SunTrust Account Name | Qty. | USD Value |
| 1 | 2483 | Pedro Alatorre Damy ("SunTrust Account No. 2483") | 17 | $17,000.00 |
| 2 | 3390 | Alatorre-Damy LLC ("SunTrust Account No. 3390") | 1 | $1,000.00 |
| 3 | 1972 | Tahyri Diaz Molina ("SunTrust Account No. 1972") | 35 | $35,000.00 |
| 4 | 2147 | Tahyri Diaz Molina ("SunTrust Account No. 2147") | 23 | $23,000.00 |

4

| **DEPOSIT OF TRAVELERS CHEQUES (3/7/2014 – 9/30/2015)** |

| # | Acct No. | SunTrust Account Name | Qty. | USD Value |
|---|---|---|---|---|
| 5 | 2152 | Bertha Patricia Damy de Gonzalez ("SunTrust Account No. 2152") | 12 | $12,000.00 |
| 6 | 1279 | Bertha Patricia Damy de Gonzalez ("SunTrust Account No. 1279") | 18 | $18,000.00 |
| 7 | IOTA1 3292 | Gustavo J. Garcia-Montes P.A. ("SunTrust IOTA No. 3292") | 20 | $20,000.00 |
| 8 | IOTA 1980 | Gustavo J. Garcia-Montes P.A. ("SunTrust IOTA No. 1980") | 94 | $94,000.00 |
| | | **TOTAL** | 220 | $220,000.00 |

12. The account holders of the SunTrust Accounts were all associated with the Defendant. For instance, according to online corporate records, Alatorre-Damy LLC was established on or about May 21, 2014, in the state of Florida, with the Defendant and his aunt, Bertha Patricia Damy de Gonzalez ("Damy de Gonzalez"), as its members.

13. Alatorre-Damy LLC's registered agent was Garcia-Montes, who was also the Defendant's defense counsel at the time.

14. Tahyri Diaz Molina ("Diaz Molina") is the mother of Alatorre Damy's child.

15. Both Diaz Molina and Damy de Gonzalez are Mexican citizens and residents.

16. On or about October 16, 2015, pursuant to a seizure warrant authorized by U.S. Magistrate Judge Edwin Torres, a DEA Special Agent seized all funds from the SunTrust Accounts. *See* Case No. 15-MJ-03349-TORRES.

17. A total of approximately $108,093.15 in U.S. currency was seized from SunTrust Account No. 2483, SunTrust Account No. 3390, SunTrust Account No. 2147, SunTrust Account No. 1972, SunTrust Account No. 2152, and SunTrust Account No. 1279 (the "**Subject Funds**").

   *1. Overview of Defendant's Bank Activity Involving Travelers Cheques*

---

[1] IOTA stands for Interest on Trust Account.

18. Of 220 American Express travelers cheques deposited into the SunTrust Accounts, approximately 214 cheques had serial numbers that were consecutive with at least one of the other deposited cheques. At least 184 of the travelers cheques were sold to CDC Puebla between on or about September 25, 2006, and on or about March 12, 2007, during the period of the Defendant and CDC Puebla's convicted money laundering conspiracy, pursuant to a commercial contract signed by Gutierrez, one of the Defendant's co-conspirators who is currently a fugitive defendant.

19. In addition, the Defendant signed and countersigned at least 63 of the American Express travelers cheques, which were subsequently directly deposited into five of the SunTrust Accounts. Most of the remaining American Express travelers cheques, approximately 101 cheques, were signed and countersigned by Garcia-Montes, the Defendant's then-defense counsel, and subsequently deposited into counsel's IOTAs.

20. Of the remaining American Express travelers cheques, approximately 48 cheques were marked with an unknown signature, but the Defendant personally deposited at least 40 of these 48 cheques into SunTrust Accounts held in the name of Diaz Molina and Damy de Gonzalez. Diaz Molina and Damy de Gonzalez's signatures only appear on a total of eight of the American Express travelers cheques deposited into the SunTrust Accounts.

21. A more detailed description of the Defendant's custody and control of these American Express travelers cheques and the SunTrust Accounts is provided below. A summary chart the deposited American Express travelers cheques is provided in Exhibit A.

### 2. SunTrust Account No. 2483 (Alatorre Damy) and SunTrust Account No. 3390 (Alatorre-Damy LLC)

22. The Defendant was the sole signatory of both SunTrust Account No. 2483 and SunTrust Account No. 3390.

23. Between on or about April 29, 2014, and on or about May 20, 2014, approximately 17 American Express travelers cheques totaling, in value, $17,000 in U.S. currency were deposited into SunTrust Account No. 2483. These 17 cheques were signed and countersigned by the Defendant, and bank surveillance confirmed that he personally deposited at least 12 of the cheques.

24. On or about May 28, 2014, one American Express travelers cheque, with a value of $1,000 in U.S. currency, was deposited into SunTrust Account No. 3390. This cheque was also signed and countersigned by the Defendant.

25. On or about October 16, 2015, pursuant to a seizure warrant, approximately $1,436 in U.S. currency was seized from SunTrust Account No. 2483, and approximately $7,696.19 in U.S. currency was seized from SunTrust Account No. 3390.

### 3. SunTrust Account No. 1972 (Diaz Molina)

26. Between on or about April 8, 2014, and on or about May 18, 2015, approximately 35 American Express travelers cheques totaling, in value, $35,000 in U.S. currency were deposited into SunTrust Account No. 1972. Of the American Express travelers cheques deposited, approximately 31 were either signed by the Defendant or personally deposited by him.

27. Specifically, six cheques deposited on or May 28, 2014, and nine cheques deposited on or about September 22, 2015, were signed and countersigned by the Defendant. The remaining 16 American Express travelers cheques, although marked with an unknown signature, were deposited by the Defendant on or about April 10, 2015, and on or about May 18, 2015.

28. According to travel records, Diaz Molina was not present in the United States when these 31 American Express travelers cheques were deposited. She was also not present in United States for much of the activity in SunTrust Account No. 1972, which included multiple debit card purchases for groceries, gas, parking, and restaurants in Brickell, Miami, where similar purchases

were made with funds from the Defendant's accounts at SunTrust.

29. The funds in SunTrust Account No. 1972 that were derived from deposits of American Express travelers cheques were subsequently transferred and commingled with funds in SunTrust Account No. 2147. In total, approximately $29,592.91 in U.S. currency was transferred to SunTrust Account No. 2147 on or about May 18 and 19, 2015, leaving a balance of only $1,000 in U.S. currency in SunTrust Account No. 1972.

30. On or about October 16, 2015, pursuant to a seizure warrant, $1,000 in U.S. currency was seized from SunTrust Account No. 1972.

### 4. *SunTrust Account No. 2147 (Diaz Molina)*

31. Between on or about July 29, 2015, and on or about September 30, 2015, approximately 23 American Express travelers cheques totaling, in value, $23,000 in U.S. currency were deposited into SunTrust Account No. 2147. Although these cheques were marked with an unknown signature, 15 of them were personally deposited by the Defendant. The remaining eight were deposited by a bank employee at SunTrust Bank.

32. Aside from these deposits, the only other activity in this account were small interest-related credits and debits, and the transfer of approximately $29,592.91 in U.S. currency from SunTrust Account No. 1972 to SunTrust Account No. 2147 noted in paragraph 22.

33. On or about October 16, 2015, pursuant to a seizure warrant, $52,642.17 in U.S. currency was seized from SunTrust Account No. 2147.

### 5. *SunTrust Account No. 2152 (Damy de Gonzalez)*

34. Between on or about March 7, 2014, and on or about May 28, 2014, approximately 12 American Express travelers cheques totaling, in value, $12,000 in U.S. currency were deposited into SunTrust Account No. 2152. Of the American Express travelers cheques deposited,

approximately 8 were signed by the Defendant. These eight cheques were deposited on May 28, 2014, the same date travelers cheques bearing the Defendant's signature were also deposited into SunTrust Account No. 1972.

35. SunTrust Account No. 2152 also received funds via direct transfers from a Mexican bank account, which were subsequently transferred back and forth between SunTrust Account No. 2152 and SunTrust Account No. 1279. Eventually, some of these funds remained in SunTrust Account No. 1279 and were withdrawn in two checks made payable to the Defendant and Garcia Montes, respectively, to purchase the Subject Café.

36. On or about October 16, 2015, pursuant to a seizure warrant, $2,238.58 in U.S. currency was seized from SunTrust Account No. 2152.

### 6. *SunTrust Account No. 1279 (Damy De Gonzalez)*

37. Between on or about April 10, 2015, and on or about May 18, 2015, approximately 18 American Express travelers cheques totaling, in value, $18,000 in U.S. currency were deposited into SunTrust Account No. 1279. Nine of these cheques contained an unknown signature, while the remaining nine were signed and countersigned by the Defendant. Based on bank surveillance, all of these cheques were personally deposited by the Defendant.

38. As noted above, SunTrust Account No. 1279 also received funds traceable to the American Express travelers cheques and other funds deposited into SunTrust Account No. 2152.

39. On or about October 16, 2015, pursuant to a seizure warrant the balance of $43,080.21 in U.S. currency was seized from SunTrust Account No. 1279.

### C. Subject Café

40. In addition, between on or about July 23, 2014, and October 31, 2014, approximately 94 American Express travelers cheques totaling, in value, $94,000 in U.S. currency

were deposited into SunTrust IOTA No. 1980. Of these cheques, 13 American Express travelers cheques were signed and countersigned by the Defendant. The remaining cheques were signed and countersigned by Garcia Montes, the Defendant's then-defense counsel.

41. In addition to these 94 cheques, an additional 20 American Express travelers cheques were deposited into SunTrust IOTA No. 3292. These 20 cheques were signed and countersigned by Garcia-Montes and deposited by a bank employee.

42. On or about October 16, 2015, funds were also seized from SunTrust IOTA No. 1980 and SunTrust IOTA No. 3292, pursuant to a seizure warrant. Based on information obtained subsequent to the seizure, funds traceable to the American Express travelers cheques deposited into SunTrust IOTA No. 3292 and SunTrust IOTA No. 1980 were withdrawn to fund the acquisition of Latinos 305 Café ("**Subject Café**"), a business located in downtown Miami at 44 N.W. 1st Street, Miami, Florida 33132.

43. The **Subject Café** was formally purchased by Latinos 305 Cafe, LLC, a limited liability company established in the state of Florida on October 8, 2014, with Garcia-Montes as its registered agent, Alatorre-Damy LLC as an authorized member, and KSC Salas Group LLC as the manager.

44. Kelvin Salas ("Salas"), Alatorre Damy's former roommate, was both the manager and registered agent for KSC Salas Group LLC. KSC Salas Group LLC was also established on October 8, 2014.

45. Based on financial and other records, American Express travelers cheques and other funds controlled by the Defendant funded the 2014 purchase of the **Subject Café**, accounting for approximately $120,337.04, or 75 percent, of the $160,337.00 purchase price.

46. Specifically, Alatorre-Damy LLC was credited with the following funds used

toward the purchase of the **Subject Café**: (a) $94,000 from SunTrust IOTA No. 1980, which was traceable to the deposit of American Express travelers cheques; (b) $1,000 from SunTrust IOTA No. 1980, which the Defendant deposited into the account in cash; and (c) $12,837.04 from a $25,337.04 check drawn from SunTrust No. 2152 that was cashed by the Defendant.

47. Also, on or about November 12, 2014, the Defendant deposited a $12,500 cashier's check into an account held by the **Subject Café**, which was funded by $4,500 cash and a $8,000 check from SunTrust Account No. 1972. This check was made to appear as it came from KSC Salas Group, LLC, representing its contribution to the purchase price of the **Subject Café**.

48. In addition, in 2015, $20,000 in U.S. currency traceable to the 20 American Express travelers cheques deposited into SunTrust IOTA No. 3292 were used for the Subject Café's operating expenses and credited as Alatorre-Damy LLC's contribution to the **Subject Café**.

49. The Defendant failed to disclose this financial activity to the U.S. Probation Office, prompting a petition in January 2016 that alleged that he violated the terms of his supervised release by making false statements on his May and June 2014 monthly reports.

50. On March 31, 2016, after his final revocation hearing, the Court revoked the Defendant's supervised release, and re-sentenced him to a term of seven months of incarceration, to be followed by 24 months of supervised release.

51. After investigating the Defendant's assets, it is the conclusion of the declarant that due to the Defendant's acts or omissions, other directly forfeitable property either cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled proceeds cannot be divided without difficulty.

Dated on April 3, 2017, in Miami, Florida.

_____
AUSTIN LOVE
Special Agent, Drug Enforcement Administration